1 | FRANCIS M. GREGOREK (144785)
WOLF HALDENSTEIN ADLER
2 |   FREEMAN & HERZ LLP
750 B Street, Ste. 2770
3 | San Diego, CA 92101
Tel: 619-239-4599
4 | Fax: 619-234-4599

5 | JAMES F. CLAPP (145814)
DOSTART CLAPP GORDON & COVENEY, LLP
6 | 4370 La Jolla Village Dr. Ste. 970
San Diego, CA 92122
7 | Tel: 858-623-4200
Fax: 858-623-4299

8 |
Attorneys for Plaintiffs
9 |
SAMUEL S. SHAULSON
10 | MORGAN LEWIS & BOCKIUS, LLP
101 Park Ave.
11 | New York, NY 10178
Tel: 212-309-6000
12 | Fax: 212-309-6001

13 | Attorneys for Defendants

14 |

15 | UNITED STATES DISTRICT COURT

16 | SOUTHERN DISTRICT OF CALIFORNIA

17 | ROBERT STEINBERG, ROBERT N.     ) Case No. 3:06-cv-02628-BEN-NLS
ADLER, FRANK V. FINIZIA, BRIAN C.   )
18 | LATZ, GERARD SCORZIELLO, JEFF    )
QUINN, JOHN VOLPE, PAUL ROLES,     ) **MEMORANDUM OF POINTS AND**
19 | JANEMARIE LENIHAN, DAVID ANDREW  ) **AUTHORITIES IN SUPPORT OF JOINT**
GASMAN, ISRAEL HARMAN, JOHN        ) **MOTION FOR FINAL APPROVAL OF**
20 | MASKUBI, VERNON D. BROWN, JOSEPH ) **CLASS AND COLLECTIVE ACTION**
STOWELL, JR., KYLE R. ARMITAGE,    ) **SETTLEMENT**
21 | CHRISTOPHER D. BART, and ERIC N.  )
WULFF, on behalf of themselves, the general ) DATE:     November 3, 2008
22 | public, and all others similarly situated,   ) TIME:     10:30 a.m.
) CTRM:     3, 4th Floor
23 |                     Plaintiffs,          ) JUDGE:    Hon. Roger T. Benitez
vs.                                )
24 |                                    )
MORGAN STANLEY & CO.               )
25 | INCORPORATED and MORGAN          )
STANLEY DW INC.,                   )
26 |                     Defendants.        )
                                   )
27 | ——————————————————————————      )

28 |

# TABLE OF CONTENTS

PAGE

I.      INTRODUCTION ............................................................................................. 1

II.     PROCEDURAL BACKGROUND ................................................................... 2

III.    THE SETTLEMENT MEETS THE STANDARDS FOR FINAL APPROVAL ................. 4

        A.    The Strength Of Plaintiffs' Case ................................................... 5

        B.    The Risk, Expense, Complexity And Likely Duration Of Further Litigation ........... 8

        C.    The Risk Of Maintaining Class Action Status Throughout The Trial ................... 10

        D.    The Amount Offered In Settlement ................................................ 10

        E.    The Extent Of Discovery Completed And The Stage Of The Proceedings ........... 11

        F.    The Experience And Views Of Counsel ........................................... 11

        G.    The Reaction Of The Class To The Settlement ................................... 12

        H.    There Was No Collusion Between The Parties ................................... 12

IV.     THE SINGLE CLASS MEMBER OBJECTION SHOULD BE OVERRULED ............... 13

V.      THE PLAN OF ALLOCATION IS REASONABLE ......................................... 13

VI.     CONCLUSION ................................................................................................ 15

06-CV-2628 BEN

# TABLE OF AUTHORITIES

PAGE

## CASES

*Auer v. Robbins,*
   519 U.S. 452 (1997) ................................................................................................ 6

*Bachrach v. Chase Investment Services Corp.,*
   2007 U.S. Dist. LEXIS 80927 (D.N.J. Nov. 1, 2007).................................. 10

*Bahramipour v. Citigroup Global Markets, Inc.,*
   No. C 04-4440 CW, 2006 WL 449132 (N.D. Cal. Feb. 22, 2006) .......... 11, 14

*Bell v. Farmers Insurance Exchange,*
   87 Cal. App. 4th 805 (2001)................................................................................ 7

*Bell v. Farmers Insurance Exchange,*
   137 Cal. App. 4th 835 (2006)............................................................................. 9

*Bowman v. UBS*
   Slip Copy, No. C-04-3525 MMC, 2007 WL 2343903 (N.D. Cal. Aug. 14, 2007)................... 12

*Boyd v. Bechtel Corp.,*
   485 F. Supp. 610 (N.D. Cal. 1979) ............................................................... 12

*Burns v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
   No. 04-4135 MMC, slip op. (N.D. Cal.) ..................................................... 12

*Churchill Village, L.L.C. v. General Electric,*
   361 F.3d 566 (9th Cir. 2003)............................................................................ 12

*Class Plaintiffs v. Seattle,*
   955 F.2d 1268 (9th Cir. 1992)....................................................................... 4, 5

*Dean Witter Reynolds, Inc. v. Ross,*
   75 A.D.2d 373 (1980) ........................................................................................ 8

*Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2nd Cir. 1974).......................................................................... 13

*Glass v. UBS*
   Slip Copy, No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ................... 14

*Handler v. Oppenheimer & Co., Inc.,*
   Case No. BC 343542 (Cal. Super. Ct. Oct. 9, 2007)................................. 10

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998)........................................................................... 5

*Hein v. PNC Financial Services Group, Inc.,*
   511 F. Supp. 2d 563 (E.D. Pa. 2007) ............................................................. 6

06-CV-2628 BEN

*In Re "Agent Orange" Product Liability Litigation,*
   818 F.2d 179 (2nd Cir. 1987)......................................................................... 14

*In Re Equity Funding Corp. of America Securities Litigation,*
   603 F.2d 1353 (9th Cir. 1979)....................................................................... 14

*In re Farmers Overtime Pay Litigation,*
   300 F. Supp. 2d 1020 ...................................................................................... 9

*In re Mego Financial Corporation Securities Litigation,*
   213 F.3d 454 (9th Cir. 2000)................................................................. 11, 14

*Kerr's Catering v. Department of Industrial Relations,*
   57 Cal. 2d 319 (1962)...................................................................................... 7

*Koehl v. Verio, Inc.,*
   142 Cal. App. 4th 1313 (2006) ....................................................................... 8

*Levy v. Verizon Information Servs., Inc.,*
   498 F. Supp. 2d 586 (E.D.N.Y. 2007)........................................................... 8

*Linney v. Cellular Alaska Partnership,*
   151 F.3d 1234 (9th Cir. 1998)................................................................. 4, 11

*Miller v. Farmers Insurance Exchange,*
   481 F.3d 1119 (9th Cir. 2007 ..................................................................... 6, 9

*Mytych v. May Dep't Stores Co.,*
   260 Conn. 152 (2002)...................................................................................... 8

*Officers for Justice v. Civil Service Comm'n,*
   688 F.2d 615 (9th Cir. 1982)........................................................................... 4

*Pachter v. Bernard Hodes Group, Inc.,*
   10 N.Y.3d 609 (2008) ...................................................................................... 8

*Perry v. U.S. Bank,*
   No. 00-1799, 2001 WL 34920473(N.D. Cal. Oct. 16, 2001)....................... 10

*Pontius v. Delta Financial Corp.,*
   No. 04-1737, 2007 U.S. Dist. LEXIS 50980 (W.D. Pa. March 20, 2007)................................. 6

*Prachasaisoradej v. Ralphs Grocery,*
   42 Cal. 4th 217 (2007)..................................................................................... 8

*Ramirez v. Yosemite Water Co., Inc.,*
   20 Cal.4th 785 (1999)...................................................................................... 7

*Sommers v. Abraham Lincoln Federal Savings & Loan Association,*
   79 F.R.D. 571 (E.D. Pa. 1978) ..................................................................... 12

*Takacs v. A.G. Edwards,*
   444 F. Supp. 2d 1100 (S.D.Cal. 2006) ................................................ 7, 9, 12

*Ubalde v. Prudential Secs., Inc.,*
    Case No. BC 245149 (Cal. Super. Ct. Nov. 1, 2004)..............................................................10

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
    396 F.3d 96 (2nd Cir. 2005)..............................................................................................5

**STATUTES**

Cal. Labor Code
    §515(a)..............................................................................................................................7
    §2802................................................................................................................................7

Fair Labor Standards Act
    29 U.S.C. §201, *et seq.*.....................................................................................................1

29 C.F.R.
    §541.200............................................................................................................................5
    §541.203(a)........................................................................................................................6
    §541.600............................................................................................................................7

**OTHER AUTHORITIES**

MANUAL FOR COMPLEX LITIGATION (THIRD) (1995)
    § 30.42..............................................................................................................................4

I.    **INTRODUCTION**

In this joint motion, Plaintiffs Robert Steinberg, Robert N. Adler, Frank V. Finizia, Brian C. Latz, Gerard Scorziello, Paul Roles, Janemarie Lenihan, David Andrew Gasman, Israel Harman, John Maskubi, Vernon D. Brown, Jeff Quinn, Joseph Stowell, Jr. and Kyle R. Armitage (collectively, "Plaintiffs") and Defendants Morgan Stanley & Co. Incorporated and Morgan Stanley DW Inc. (collectively, "Morgan Stanley") seek final approval of a $50,000,000 class and collective action settlement (the "Settlement"). The terms of the Settlement are memorialized in the "Joint Stipulation and Settlement Agreement" ("Stipulation"), filed as Docket No. 15.

The Settlement covers the following individuals ("Class Members"): (1) current and former Financial Advisors and Financial Advisor Trainees who were employed by Morgan Stanley anywhere in the United States (*excluding* California) during the applicable Class Period; and (2) current and former Producing Managers, Assistant Branch Managers, and Sales Managers (together, "Managers") who supervise or supervised Financial Advisors or Financial Advisor Trainees and were employed by Morgan Stanley anywhere in the United States (*including* California) during the applicable Class Period. *See* Stipulation, sections 1.5, 1.8, 1.9, and 1.14. The "Class Period" means the maximum applicable limitations period for wage and hour claims in the jurisdiction where the Class Member worked. *See* Stipulation, section 1.9.

If approved by the Court, the Settlement would resolve the instant action, as well as the 10 other class and collective action lawsuits that were transferred to this Court by the Judicial Panel on Multidistrict Litigation beginning on December 27, 2006. *See* Transfer Order, MDL Docket No. 1806, dated December 27, 2006, attached as Exhibit 1 to the Declaration of James F. Clapp, filed herewith.

Plaintiffs have alleged two main claims against Morgan Stanley. First, Plaintiffs allege that Morgan Stanley misclassified the Class Members as "exempt" employees, thereby denying them overtime pay under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), as well as under the laws of many states. Plaintiffs also allege that Morgan Stanley illegally reduced the Class members' commissions to pay for certain business-related expenses, such as the cost of staff support and losses due to trading errors, in violation of the laws of many states. Morgan Stanley denies the Plaintiffs' allegations and maintains that, at all times, its compensation policies

- 1 -

complied with state and federal law.

On January 8, 2008, this Court granted preliminary approval of the Settlement and directed the parties to consult with the Special Master, retired federal judge Charles A. Legge, to determine a plan for allocating the settlement proceeds to the Class members. *See* Docket No. 18. On May 20, 2008, the Court approved Judge Legge's allocation plan and authorized the parties to mail the class notice. *See* Docket No. 27. Subsequently, the Claims Administrator, Rust Consulting, mailed out 20,059 class notices to the Class Members' last-known addresses (as updated through the U.S. Postal Service's National Change of Address Database). Rust Consulting received 10,255 completed claim forms. *See* Declaration of Jonathan D. Paul, representative of Rust Consulting, filed herewith. Only one Class member, Abraham David Goldstein, has objected to the Settlement. His objection, which consists of a single paragraph, is unsupported by any evidence, argument, or case citations. For the reasons discussed in Section IV below, the objection should be overruled.

The Settlement meets the Ninth Circuit's standards for final approval. First, as discussed below, the Settlement is entitled to a presumption of fairness, since it was reached through arm's-length, non-collusive negotiations between experienced counsel, after a thorough exchange of information. Furthermore, the Settlement is fundamentally reasonable, in light of the novelty and uncertainty of the Plaintiffs' claims and the risks and costs associated with further litigation. Accordingly, the parties respectfully request that the Court overrule the single outstanding objection and approve the Settlement in its entirety.

## II.  PROCEDURAL BACKGROUND

On September 1, 2005, Plaintiff Robert Steinberg filed a class action lawsuit against Morgan Stanley in the Superior Court of New Jersey, Bergen County (the "*Steinberg I* action"). Morgan Stanley subsequently removed the *Steinberg I* action to the United States District Court for the District of New Jersey, where it was assigned Case No. 05-4856.

On September 9, 2005, Plaintiff David Andrew Gasman filed a purported class and collective action against Morgan Stanley in the United States District Court for the Southern District of New York (the "*Gasman* action"), Case No. 05-7889.

On September 23, 2005, Plaintiff Paul Roles filed a purported class and collective action

against Morgan Stanley in the United States District Court for the Eastern District of New York (the "*Roles* action"), Case No. 05-4553.

On May 22, 2006, Plaintiff Janemarie Lenihan filed a purported class and collective action against Morgan Stanley in the United States District Court for the District of Connecticut (the "*Lenihan* action"), Case No. 06-794.  Also on May 22, 2006, Plaintiffs Robert Adler, Frank Finizia, Brian Latz, and Gerard Scorziello filed a purported class action against Morgan Stanley in the Superior Court of New Jersey, Bergen County (the "*Adler* action"), Case No. L 3823-06.

On June 23, 2006, Plaintiff Kyle L. Armitage filed a purported class and collective action against Morgan Stanley in the United States District Court for the Eastern District of Texas (the "*Armitage* action"), Case No. 06-347.

On August 24, 2006, Plaintiff Joseph Stowell, Jr. filed a purported class and collective action against Morgan Stanley in the United States District Court for the Central District of Illinois (the "*Stowell* action"), Case No. 06-1219.

On September 25, 2006, Plaintiffs Jeff Quinn and John Volpe filed a purported class and collective action against Morgan Stanley in the United States District Court for the District of New Jersey (the "*Quinn* action"), Case No. 06-4560.

On October 12, 2006, Plaintiff Vernon Brown filed a purported class and collective action against Morgan Stanley in the United States District Court for the Southern District of California (the "*Brown* action"), Case No. 06-2325.

To effectuate a settlement of the foregoing lawsuits, on November 29, 2006, the Plaintiffs from the *Steinberg I, Gasman, Roles, Lenihan, Adler*, and *Brown* actions filed a Consolidated Complaint in the United States District Court for the Southern District of California (the "Consolidated Action").  The Consolidated Action was assigned to this Court.

On December 27, 2006, the Judicial Panel on Multidistrict Litigation ("JPML") transferred the *Steinberg I, Gasman, Roles, Lenihan, Adler, Brown, Armitage*, and *Stowell* actions to this Court for consolidated pretrial proceedings so that this Court could administer the parties' nationwide Settlement.  On January 3, 2007, the JPML transferred the *Quinn* action to this Court as a "tag-along" action.  On January 19, 2007, Christopher Bart and Eric Wulff filed a purported class and collective action against Morgan Stanley in the United States District Court for the

Northern District of Ohio (the "*Bart* action"), Case No. 07-169.  On June 22, 2007, the JPML transferred the *Bart* action to this Court as a tag-along action.

As noted above, on January 8, 2008, the Court preliminarily approved the Settlement, and on May 20, 2008, the Court approved Judge Legge's plan of allocation.  Subsequently, Morgan Stanley provided the Claims Administrator with the last-known addresses of the Class Members. The Claims Administrator ran those addresses through the National Change of Address Database, updated the addresses as appropriate, and mailed the Court-approved class notice and accompanying documents to the Class Members.  *See* Stipulation, sections 2.5.1-2.5.6.  Class members had 60 days following the mailing of the Class Notice to file claims, object, or opt-out. Stipulation, sections 1.32 and 2.6.2-2.6.4.  Out of 20,063 Class Members, a total of 9,927 Class Members (49.48%) have returned completed claim forms in a timely manner.  *See* Paul Declaration, ¶ 15.  More importantly, those Class Members who have returned completed claim forms in a timely manner have claimed approximately 66.1% of the total work months that were worked by the entire Class.  Only one Class Member, Mr. Goldstein, objected to the Settlement, and only 54 (0.27% of the Class) have returned completed opt-out forms in a timely manner.  *See* Paul Declaration, ¶¶ 18-19.  For a class of this size, the Settlement is virtually unopposed.

## III.   THE SETTLEMENT MEETS THE STANDARDS FOR FINAL APPROVAL

There is a strong judicial policy favoring settlements, particularly in complex class actions. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  The "universal standard" in evaluating the fairness of a settlement is whether the settlement is "fundamentally fair, adequate and reasonable." *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). As the Ninth Circuit has recognized, "the very essence of a settlement is compromise." *Id.* at 624. "[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998).

A settlement is presumed to be fair when: (1) it is reached through arm's-length negotiations, (2) the putative class is represented by experienced counsel, and (3) the parties have conducted sufficient discovery. MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42, (1995); *Wal-*

*Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2nd Cir. 2005). Here, all of the factors giving rise to a presumption of fairness exist. First, the Settlement was the product of arm's-length, non-collusive negotiations over an extended period of time. *See* Clapp Declaration, filed herewith, ¶ 3. Second, Plaintiffs are represented by experienced counsel. *Id.* Declaration of Jeffrey G. Smith, filed herewith, ¶¶ 3-6. Third, before commencing settlement negotiations, the parties exchanged a significant amount of information, both formally and informally. Clapp Declaration, ¶ 3. Both sides were thoroughly familiar with the facts of the case and the relative strengths and weaknesses of the claims and defenses.

In evaluating the fairness of a settlement, the Court should weigh the following factors: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). In addition, the Court should satisfy itself that the settlement is not the product of collusion between the plaintiffs and the defendant. *Class Plaintiffs*, 955 F.2d. at 1290. Here, each factor weighs in favor of approval.

## A.     The Strength Of Plaintiffs' Case

Although Plaintiffs believe strongly in the merits of their case, they concede that this case involves novel theories and unsettled questions of law. Plaintiffs contend that Morgan Stanley's Financial Advisors and the other individuals who comprise the Class are entitled to overtime pay because they do not meet the test for exempt status under the FLSA. Conversely, Morgan Stanley's position is that these individuals are exempt from overtime compensation under a variety of FLSA exemptions, including but not limited to the administrative exemption.

In order to qualify for the administrative exemption, Financial Advisors must, inter alia, be paid on a salary or fee basis, and their primary duty must be administrative in nature. 29 C.F.R. section 541.200. One of the key disputes in this case is whether the guaranteed monthly payment that Morgan Stanley pays to its Financial Advisors qualifies as a "salary" for purposes of the salary basis test. A May 4, 1971 opinion letter from the U.S. Department of Labor ("DOL")

suggests that a monthly draw does not qualify as a salary, but on November 27, 2006, the DOL withdrew that letter and opined that a guaranteed draw meets the salary basis test provided that the amount of the draw does not fall below the FLSA's minimum salary threshold (currently $455/week, or $1,971.67/month).  *See* Nov. 27, 2006 Opinion Letter, Exhibit 2 to the Clapp Declaration, pages 7-8 and n.5.  The DOL letter is significant because the salary basis test is a "creature of the Secretary [of Labor]'s own regulations," and the DOL's interpretation is controlling "unless plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997).  At least one district court has relied on the letter to hold that a draw-versus-commission plan does, in fact, meet the FLSA's salary basis test.  *Pontius v. Delta Financial Corp.*, 2007 U.S. Dist. LEXIS 50980, at *20-22 (W.D. Pa. March 20, 2007), *adopted at* 2007 U.S. Dist. LEXIS 34393 (W.D. Pa. May 9, 2007).

The parties also dispute whether Financial Advisors meet the "duties" test of the administrative exemption.  Plaintiffs contend that the primary duty of a Financial Advisor is to sell financial products, which is non-exempt work.  *See* 29 C.F.R. section 541.203(a).  On the other hand, Morgan Stanley contends that a Financial Advisor's primary duty is to analyze the customer's financial information and advise the customer about which financial products best meet the customer's needs, which is exempt work.  *Id.*  In its November 27, 2006 letter, the DOL opined that stockbrokers meet the duties test of the administrative exemption even though they spend some of their time selling financial products.  *See* Exhibit 2 to Clapp Declaration, pages 5-6 and n.2.  The Ninth Circuit recently signaled an inclination to defer to the DOL when interpreting the duties test of the FLSA's administrative exemption.  *See Miller v. Farmers Insurance Exchange*, 481 F.3d 1119 (9th Cir. 2007) (reversing an award of $52.5 million in overtime pay to a class of Farmers claims adjusters, relying in part on a DOL opinion letter holding that claims adjusters are administratively exempt under the FLSA).  In addition, at least one district court has held that stockbrokers are administratively exempt under the FLSA.  *Hein v. PNC Financial Services Group, Inc.*, 511 F. Supp. 2d 563, 575 (E.D. Pa. 2007).  In light of these authorities, Plaintiffs' FLSA claims are uncertain.

Plaintiffs have also alleged overtime claims under applicable state law.  However, state overtime laws are generally duplicative of the FLSA, with the exception of California's.  It is

Plaintiffs' view that California's administrative exemption is narrower and more favorable to employees than the FLSA's, in that: (1) California has adopted a purely quantitative test for measuring exempt status (i.e., an exempt employee must spend 50% or more of his or her time on exempt administrative tasks) as opposed to the qualitative "primary duty" test under the FLSA (*see Ramirez v. Yosemite Water Co., Inc.*, 20 Cal.4th 785, 797-98 (1999)); and (2) California's administrative exemption requires that the employee be paid a guaranteed minimum amount of not less than twice the California minimum wage (currently $2,773.33 per month), whereas the FLSA's salary requirement is only $1,971.67 per month (compare Cal. Labor Code section 515(a) with 29 C.F.R. section 541.600).  Furthermore, Plaintiffs contend, California courts have ruled that employees who are engaged in "producing" the employer's product or service are not administratively exempt under California law. *See Bell v. Farmers Insurance Exchange*, 87 Cal. App. 4th 805, 819-23 (2001).  On the other hand, Morgan Stanley could contend that even if Financial Advisors do not qualify for California's administrative exemption, they are exempt under the commissioned sales exemption, which applies to employees who: (1) earn more than 1.5 times the minimum wage, and (2) receive more than 50% of their wages in the form of commissions.  Wage Order 4-2001, section 3(D), 8 C.C.R. section 11040. No California or federal court has decided whether stockbrokers are exempt from overtime under California law.

Finally, Plaintiffs' wage deduction claims are also uncertain.  Plaintiffs' position is that no federal or state court has decided definitively whether a brokerage house may deduct business expenses from the commissions of its stockbrokers.[1]  Plaintiffs further contend that, with the exception of California, there is very little case law on point.  Plaintiffs' California claims are based on the reasoning of *Kerr's Catering v. Department of Industrial Relations*, 57 Cal. 2d 319, 329 (1962) which upheld an administrative regulation that prevented an employer from deducting losses due to cash shortages from an employee's commissions because such expenses were an ordinary cost of doing business.  Plaintiffs also rely on Cal. Labor Code section 2802, which requires an employer to indemnify an employee against all "necessary" expenses the employee

---

[1]    Plaintiffs contend that the closest case is *Takacs v. A.G. Edwards & Sons, Inc.*, 444 F. Supp. 2d 1100, 1122-25 (S.D. Cal. 2006), in which Judge Houston held that the legality of certain wage deductions was a triable issue of fact.

incurs in the course of his or her job.

Morgan Stanley contends that under its applicable compensation plans, Class members' incentive compensation does not become "earned" until business expenses have been factored into their calculation, and that it is not illegal to take business expenses into consideration in the calculation of commissions or incentive compensation. *See, e.g., Pachter v. Bernard Hodes Group, Inc.*, 10 N.Y.3d 609, 618-19 (2008) (New York law allows employers to make adjustments for business expenses as part of the calculation of commissions); *Prachasaisoradej v. Ralphs Grocery*, 42 Cal. 4th 217 (2007) (in certain cases, an employer may lawfully deduct certain business costs from its employees' compensation formula); *Koehl v. Verio, Inc.*, 142 Cal. App. 4th 1313, 1334-37 (2006) (California law permits employer to deduct commission advances from unearned gross commissions); *Levy v. Verizon Information Servs., Inc.*, 498 F. Supp. 2d 586, 600-03 (E.D.N.Y. 2007) (under New York and Pennsylvania law, where an incentive compensation formula includes adjustments at the end of a production period, compensation does not qualify as earned "wages" until after such adjustments are made); *Mytych v. May Dep't Stores Co.*, 260 Conn. 152 (2002) (holding that the state law limitations on wage deductions apply only to wages that are "earned," and employers and employees are free to determine by agreement when commissions shall be considered "earned"); *Dean Witter Reynolds, Inc. v. Ross*, 75 A.D.2d 373, 381 (1980) (New York appellate court held that a brokerage firm could offset trade errors and certain other business expenses as part of the calculation of incentive pay for stockbrokers without violating the New York Labor Law because the incentive pay did not become "earned" until "all appropriate adjustments were made in conformity with the incentive production plan.").

Thus, although Plaintiffs believe strongly in the merits of their case, the outcome was far from certain given the unsettled state of the law. Therefore, the "strength of plaintiffs' case" factor weighs in favor of settlement.

## B. The Risk, Expense, Complexity And Likely Duration Of Further Litigation

This dispute is comprised of 11 separate class action cases brought on behalf of more than 20,000 Class Members in 52 separate jurisdictions. If this case had not settled, class certification, discovery, and trial preparation would have been extremely time consuming and expensive.

First, the motion for class certification would have been hotly contested.  For example, in *Takacs*, 444 F. Supp. 2d 1100, which involved a California class of only 1,300 members, the class certification briefs were over two feet thick and included declarations and deposition testimony from nearly 200 witnesses.  (*Takacs* settled before the court ruled on the motion.)  *See* Clapp Declaration, ¶ 4.  Here, a contested class certification motion would have been far more complex.  Second, if the Court granted Plaintiffs' motion and certified the Class, Morgan Stanley could have sought to take the depositions of a cross-section of the Class.  In a class of this size, this might have entailed several hundred Class Member depositions, which would have been extremely costly and time-consuming.  Third, even if discovery proceeded smoothly, the case would not have been ready for trial until at least 2009, and if Plaintiffs won, Morgan Stanley could have appealed, thereby delaying payment to the class for several years.

The history of the two lawsuits against Farmers Insurance Exchange aptly illustrates the risk, delay, and expense associated with litigating an overtime class action.  The California case, *Bell v. Farmers Insurance Exchange*, was one of the first lawsuits filed in California seeking recovery of overtime pay on behalf of claims adjusters.  Bell was originally filed on October 2, 1996.   After the class was certified, 295 class member depositions were taken, and the case was tried to a jury in 2001.  Judgment was entered for plaintiffs.  However, as a result of multiple intervening appeals, which resulted in four published appellate opinions – 87 Cal. App. 4th 805 (2001); 115 Cal. App. 4th 715 (2004); 135 Cal. App. 4th 1138 (2006) and 137 Cal. App. 4th 835 (2006) – the class members were not paid until mid-2005, nine years after the lawsuit was originally filed. *Id.*, 137 Cal. App. 4th 835, 838 (2006).  The federal case, *In re Farmers Overtime Pay Litigation*, MDL 33-1439, was an MDL proceeding consolidated in the District of Oregon.  The first case was originally filed in 2001.  In 2003, the district court conducted a three-week bench trial, and on November 3, 2003, the court ruled that certain claims adjusters were entitled to overtime pay. *Id.*, 300 F. Supp. 2d 1020.  Subsequently, a $52.5 million judgment was entered for plaintiffs.  However, on March 30, 2007, six years after the original lawsuit was filed, the Ninth Circuit reversed the district court and entered judgment for Farmers. *Miller*, 481 F.3d 1119.  Like the *Farmers* cases, this case involves a novel application of the overtime laws to positions that historically have been regarded as exempt.  The risk, expense, and delay associated with litigating

1  such a case weighs in favor of approving the settlement.

2      **C.**    **The Risk Of Maintaining Class Action Status Throughout The Trial**

3      Plaintiffs strongly believe that their lawsuit is maintainable as a class action. However,

4  there are risks associated with the class certification issue. For example, Morgan Stanley might

5  have argued that class certification is inappropriate because the primary duty of a Financial

6  Advisor varies based on that person's book of business, experience level, training, and business

7  focus (individual versus institutional investors). *See, e.g., Bachrach v. Chase Investment Services*

8  *Corp.*, 2007 U.S. Dist. LEXIS 80927 (D.N.J. Nov. 1, 2007) (refusing to certify claims for

9  overtime and wage deductions brought on behalf of financial advisors); *Handler v. Oppenheimer*

10  *& Co., Inc.*, Case No. BC 343542 (Cal. Super. Ct. Oct. 9, 2007) (denying certification to putative

11  class of allegedly-misclassified financial advisors); *Ubalde v. Prudential Secs., Inc.*, Case No. BC

12  245149 (Cal. Super. Ct. Nov. 1, 2004) (same); *Perry v. U.S. Bank*, No. 00-1799, 2001 WL

13  34920473, at *6 (N.D. Cal. Oct. 16, 2001) (same). In addition, Morgan Stanley might have

14  argued that the wage deduction claims turn on whether business expenses are "necessary" and

15  benefit the employee, which would require a case-by-case determination. The uncertainty of

16  whether a contested class certification motion would have been granted warrants settlement now.

    **D.**    **The Amount Offered In Settlement**

17      The Settlement falls within the range of other wage and hour settlements involving

18  stockbrokers employed by Morgan Stanley's direct competitors. For example, on March 18, 2008,

19  U.S. District Judge Claudia Wilken of the Northern District of California granted final approval to

20  a settlement involving financial advisors employed by Citigroup/Smith Barney. The amount

21  allocated to financial advisors outside of California was approximately $50 million. Clapp

22  Declaration, ¶ 5. Similarly, on January 26, 2007, the U.S. District Judge Maxine M. Chesney of

23  the Northern District of California approved a $45 million settlement involving financial advisors

24  of UBS Financial Services. (The order granting final approval is currently on appeal.) *Id.* Thus,

25  this Settlement falls well within the range that other courts have found to be reasonable.[2]

26  _____

27  [2]    Plaintiffs also contend that the Settlement is reasonable in light of Morgan Stanley's

28  potential exposure. Morgan Stanley's exposure is difficult to quantify because there are no time

## E.   The Extent Of Discovery Completed And The Stage Of The Proceedings

In the years leading up to the tentative settlement, the parties exchanged initial disclosures, written discovery, engaged in substantive motions practice, and conducted extensive informal investigation.   Class Counsel fully understood the duties and responsibilities of the Class Members, Morgan Stanley's compensation policies, and the composition of the Class. In addition, Class Counsel interviewed or obtained written questionnaire responses from a substantial number of current and former Financial Advisors concerning their work experiences at Morgan Stanley. *See* Clapp Declaration, ¶¶ 2-3.   The Ninth Circuit has repeatedly held that, in class action settlements, extensive formal discovery "is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement."   *In re Mego Financial Corporation Securities Litigation*, 213 F.3d 454, 459 (9th Cir. 2000); *Linney,* 151 F.3d at 1239 (internal quotes omitted).   Here, Class Counsel had more than enough information to negotiate a fair settlement.   This factor weighs in favor of approval.

## F.   The Experience And Views Of Counsel

Plaintiffs' attorneys are experienced in this area of law.   Class Lead Counsel Jeffrey G. Smith, of Wolf Haldenstein Adler Freeman & Herz LLP, has also been co-lead counsel in the recently concluded *Bahramipour v. Citigroup Global Markets, Inc.*, No. 04-04440, 2006 WL 449132 (N.D. Cal. Feb. 22, 2006), the largest of the wage and hour settlements involving financial advisors.   He has also been lead counsel in wage and hour litigations against A.G. Edwards and Ryan Beck.

James F. Clapp of Dostart Clapp Gordon & Coveney, LLP, has been appointed lead plaintiffs' counsel in more than 25 certified class actions alleging violations of federal or state wage and hour laws.   Of particular significance to this case, Mr. Clapp was plaintiff's counsel in

---

records that show many overtime hours the Class Members worked.   Nevertheless, Plaintiffs estimated that if they had been successful on all of their claims at trial, Morgan Stanley's liability might have ranged from $200 million (assuming a low number of overtime hours) to perhaps $500 million.   Plaintiffs submit that a recovery that represents approximately 10-25% of Morgan Stanley's exposure is fair and reasonable in light of the risk factors discussed above, as well as the certainty of prompt recovery.

- 11 -

*Burns v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 04-4135 MMC, slip op. (N.D. Cal.), which was the first overtime class action on behalf of financial advisors that ever reached a settlement, as well as *Bowman v. UBS*, slip copy, No. C-04-3525 MMC, 2007 WL 2343903 (N.D. Cal. Aug. 14, 2007), discussed above.  Mr. Clapp was also lead counsel in *Takacs*.  In 2005, Mr. Clapp testified before the California State Assembly on the legality of deductions from commission wages.  Mr. Clapp graduated from Northwestern University School of Law and has been litigating complex business and employment disputes, with a special emphasis on wage and hour class actions, for approximately 18 years.  *See* Clapp Declaration, ¶ 2.  All of the plaintiffs' attorneys support the Settlement and believe that the Settlement is fair, reasonable, and in the best interests of the class.  *See* Declarations of James F. Clapp, Jeffrey G. Smith, John M. Kelson, Jerry K. Cimmet, Edward P. D'Alessio, Max Folkenflik, Bruce H. Nagel, James E. Hasser, Jack L. Haan, Wyatt B. Durette, Jr., Richard L. Coffman, Charles Watkins, and David Strauss.

**G.     The Reaction Of The Class To The Settlement**

The reaction of the class to the Settlement has been overwhelmingly favorable.  Only 54 Class Members (0.27% of the Class) have opted-out of the Settlement in a timely and valid manner, and only 1 Class Member (or 0.005% of the Class), has filed an objection.  By way of comparison, in *Sommers v. Abraham Lincoln Federal Savings & Loan Association*, 79 F.R.D. 571 (E.D. Pa. 1978), the district court found that an opt-out rate of 4.25% (8,000 opt-outs out of 188,000 class members) was a factor that *supported* approval of the settlement.  Similarly, in *Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979), the court approved a class action settlement in which 160 out of 1,127 class members (nearly 16% of the class) plus three of the four named plaintiffs filed objections.  *Id.* at 616, 624; *see also Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566 (9th Cir. 2003) (Ninth Circuit upheld district court's approving of a settlement involving 90,000 class members, when there were 500 opt-outs and 45 objections).  As discussed in Section IV below, the single objection in this action is without merit and should be overruled.

**H.     There Was No Collusion Between The Parties**

Finally, the Settlement is not the product of collusion.  To the contrary, the settlement negotiations were at all times adversarial and conducted at arm's length. Clapp Declaration, ¶ 3.

- 12 -

## IV. THE SINGLE CLASS MEMBER OBJECTION SHOULD BE OVERRULED

As noted above, only one Class Member, Abraham David Goldstein, objected to the Settlement. *See* Docket No. 30. No other objections were received by either Class Counsel or the Claims Administrator. *See* Clapp Declaration, ¶ 7; Paul Declaration, ¶ 19. Mr. Goldstein's objection consists of a single, conclusory paragraph:

> "The proposed settlement is insufficient in regards to the monetary compensation being received by the class action participants. Based on the calculations provided in the leaflet, I would be receiving approximately $550.00 in overtime and expenses incurred during my tenure at Morgan Stanley in Florida. This calculation insufficiently compensates the participants in the class action lawsuit. I encourage a review of the proceeds being settled and a larger calculated portion going to the class action participants. I or someone representing me will not be appearing at the final approval hearing." Docket No. 30.

Mr. Goldstein has failed to overcome the parties' showing that the Settlement is fundamentally fair and reasonable. *See Detroit v. Grinnell Corp.*, 495 F.2d 448, 465 (2nd Cir. 1974) ("To allow the objectors to disrupt the settlement on the basis of nothing more than their unsupported suppositions would completely thwart the settlement process.") Mr. Goldstein fails to offer any evidence in support of his objection, such as the number of overtime hours he worked or the amount of business expenses he incurred. As a result, it is impossible for the Court to evaluate whether the Settlement is fair to Mr. Goldstein. For example, if he worked zero overtime hours, the Settlement is more than fair to him, particularly when one considers that Florida, the state in which Mr. Goldstein worked, does not have a statute prohibiting wage deductions. Mr. Goldstein also fails to address the risk factors facing Plaintiffs – particularly the November 27, 2006 opinion letter – and fails to show or even argue that the Class would recover more if they proceeded to trial. Mr. Goldstein's unsubstantiated objection should be overruled.

## V. THE PLAN OF ALLOCATION IS REASONABLE

As discussed above, the Court appointed the Hon. Charles A. Legge (Ret.) to review the laws of the 54 jurisdictions covered by the Settlement and to recommend a plan of allocation. On May 20, 2008, the Court preliminarily approved Judge Legge's allocation plan. Under that plan, for each month that Class members were employed during the applicable covered period as Financial Advisors, Financial Advisor Trainees, and Assistant Branch Managers in "Tier 2 states," which arguably have deduction claims as well as overtime claims, they will receive 168% of the

- 13 -

amount that Class members in those same positions will receive in Tier 1 states.[3]  In addition, Producing Branch Managers and Sales Managers will receive 75% of the monthly payment that Financial Advisors, Financial Advisor Trainees, and Assistant Branch Managers will receive. *See* Docket No. 22, pages 7-8.  No Class Member has objected to Judge Legge's plan of allocation.

"District courts enjoy broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members ... equitably." *In Re "Agent Orange" Product Liability Litigation*, 818 F.2d 179, 181 (2nd Cir. 1987) (internal quotes and citation omitted).  In the Ninth Circuit, a district court's plan of allocation will only be disturbed for an abuse of discretion. *In Re Mego Financial Corporation Securities Litigation*, 213 F.3d at 460, citing *In Re Equity Funding Corp. of America Securities Litigation*, 603 F.2d 1353, 1362 (9th Cir. 1979).

In this case, Judge Legge thoroughly considered the laws of the 54 jurisdictions covered by the Settlement and recommended an allocation formula that paid more under the Settlement to those Class Members who have relatively stronger legal claims.  The allocation formula follows the template that was approved by the district courts in *Glass v. UBS*, slip copy, No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007), and *Bahramipour v. Citigroup*, No. C 04-4440 CW, 2006 WL 449132, discussed above.  Clapp Declaration, ¶ 6.  No Class Member has objected to it.  The allocation formula is reasonable and should be approved.

---

[3]    The "Tier 1 states" are: Alabama, Arkansas, Arizona, Colorado, Connecticut, District of Columbia, Delaware, Florida, Georgia, Idaho, Illinois, Kansas, Louisiana, Massachusetts, Maryland, Minnesota, Missouri, Mississippi, Montana, North Carolina, North Dakota, Nebraska, New Mexico, Nevada, Ohio, Oklahoma, South Carolina, Tennessee, Texas, Utah, Virginia, Virgin Islands, and Wisconsin.  The "Tier 2 states" are:  Alaska, California, Guam, Hawaii, Indiana, Iowa, Kentucky, Maine, Michigan, New Hampshire, New Jersey, New York, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Dakota, Vermont, Washington, West Virginia, and Wyoming.

## VI.    CONCLUSION

For all of the foregoing reasons, the parties respectfully request that the Court: (1) find that the Settlement is fair, reasonable and in the best interests of the Class; (2) overrule the single Class Member objection; and (3) grant final approval to the Settlement.

DATED:   October 10, 2008          WOLF HALDENSTEIN ADLER FREEMAN'
                                                  & HERZ LLP


                                                  s/Jeffrey G. Smith
                                                  ———————————————————
                                                  JEFFREY G. SMITH
                                                  Attorneys for Plaintiffs

DATED: October10, 2008            MORGAN LEWIS & BOCKIUS, LLP


                                                  s/Samuel S. Shaulson
                                                  ———————————————————
                                                  SAMUEL S. SHAULSON
                                                  Attorneys for Defendants

16383